**KLESTADT WINTERS JURELLER**
  **SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, New York 10036-7203
Tel: (212) 972-3000
Fax: (212) 972-2245
Tracy L. Klestadt

*Proposed Counsel to Brooklyn Roasting Works*
  *LLC, et al, Debtors and Debtors in*
  *Possession.*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

| | |
|---|---|
| In re | : |
| | : |
| Brooklyn Roasting Works LLC, *et al*, | : |
| | : |
| Debtors[1]. | : |
| | : |

-------------------------------------------------------x

Chapter 11

Case No. 20-_____ (___)

Joint Administration Pending

## DECLARATION OF THOMAS POTTER, MANAGER
## OF THE DEBTORS, PURSUANT TO LOCAL BANKRUPTCY RULE 1007-4

Thomas Potter, being duly sworn, declares and states, under penalty of perjury pursuant to

28 U.S.C. § 1746, as follows:

1.    I am one of the managers of Brooklyn Roasting Works LLC, d/b/a Brooklyn

Roasting Company, the above-captioned debtor and debtor in possession ("BRC", together with

its four subsidiaries also filing for bankruptcy protection, the "Debtors").  I have been a minority

investor in the Debtors since 2009.  I have been a Board Member of the Debtors since 2010 but in

September, 2020 became the manager of the Debtors responsible for its day-to-day operations

---

[1]    The Debtors in these cases, along with the last four digits of their federal tax identification numbers are
(i) Brooklyn Roasting Works, LLC, d/b/a Brooklyn Roasting company (7418), (ii) BRC Powerplant
LLC (2286), (iii) BRC Powerplant Building 123, LLC (2469), (iv) BRC Powerplant 45 Washington,
LLC (9636), and Brooklyn Roasting Company Powerplant LLC (6650).

because I am the manager with a financial background that could guide the Debtors through the bankruptcy process.

2.    In that role, I am the officer with primary responsible for the business and financial affairs of the Debtors. I am familiar with the Debtors' operations and books and records, which I personally know are made and maintained in the ordinary course of business.  On this basis, I have personal knowledge of the facts stated herein or knowledge based on the business records that are made and maintained in the Debtors' ordinary course of business, the information supplied to me by (a) the other members of the Debtors, (b) my colleagues who report directly to me, or (c) the Debtors' general bankruptcy counsel and other legal and professional advisors.

3.    I submit this declaration (the "Declaration") in accordance with Rule 1007-4 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York (the "Local Rules") and in connection with the Debtors' voluntary petitions (the "Petitions") for relief under subchapter V of title 11 of the United States Code (the "Bankruptcy Code") filed in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") (collectively, the "Subchapter V Cases") on October 21, 2020 (the "Petition Date").  I make this Declaration to provide the Court and all parties in interest with an overview of the Debtors, their business and the events precipitating the commencement of the Debtors' Subchapter V Cases.  This Declaration also supports the Debtors' respective voluntary petitions and First Day Motions (later defined).

4.    Except as otherwise indicated herein, the facts set forth in this Declaration are based on my personal knowledge, my review of relevant documents, information provided to me by the Debtors' management, employees or professionals, or my opinion based upon my experience, knowledge, and information concerning the Debtors' operations and the industry in which they

operate. I am authorized to submit this Declaration on the Debtors' behalf. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

5.    On the Petition Date, I caused each of the Debtors to file a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The Debtors commenced these Subchapter V Cases to effectuate a restructuring of their capital structure and operations under Subchapter V of Chapter 11 of the Bankruptcy Code.

6.    The Debtors together comprise a small business debtor within the meaning of Bankruptcy Code § 101(51D). The Debtors continue to operate their business and manage their assets as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

7.    There is no other or prior bankruptcy case filed by or against the Debtors. To the best of my knowledge, no committee of unsecured creditors was organized prior to the order for relief in the Debtors' Subchapter V Cases.

8.    A copy of the resolution authorizing the filing of these Subchapter V Cases by each of the Debtors is attached to their respective Petitions and incorporated by reference herein. Unless otherwise indicated, all financial information contained herein is presented on an estimated and unaudited basis.

9.    To enable the Debtors to operate effectively and minimize potential adverse effects in the Subchapter V Cases, the Debtors have requested certain relief in "first day" motions and applications filed with the Court (collectively, the "First Day Motions") concurrently herewith. The First Day Motions, summarized below, seek, among other thing: (i) to implement certain administrative procedures that will promote a seamless transition of the Debtors into the Subchapter V Cases; and (ii) to authorize two of the Debtors to reject certain unexpired leases of nonresidential real property as of the Petition Date and to abandon the personal property remaining

on the premises thereon as of the Petition Date, to reduce the administrative burden on the Debtors' estates. This relief is critical to the Debtors' efforts to maximize value for the benefit of their creditors and is intended to minimize the potential adverse effects that commencement of the Subchapter V Cases may have on the Debtors and their business operations.

10. I believe that the relief requested in each First Day Motion is: (a) necessary to preserve and maximize the value of the Debtors' estates; (b) essential to the successful reorganization of the Debtors; and (c) serves the best interests of the Debtors, their estates, their creditors and other parties in interest.

### A. **Background of the Debtors' Business**

11. BRC is a specialty coffee roaster, wholesaler, and retailer based in the Brooklyn Navy Yard. BRC sources, roasts and sells high quality Fair Trade, Rainforest Alliance, and Organic certified and sustainable coffees.

12. BRC is the parent company, from which the majority of the business operations for all of the Debtors is run. BRC is the only one of the Debtors in these Subchapter V Cases that maintains bank accounts in which it collects any revenue derived from each of the Debtors' locations and from which it pays all of the expenses associated with each of the other Debtors and their locations, namingly rent.

13. The four remaining Debtors, BRC Powerplant LLC, BRC Powerplant Building 123, LLC, BRC Powerplant 45 Washington, LLC and Brooklyn Roasting Company Powerplant LLC (collectively, the "Debtor Subsidiaries"), are each a subsidiary of BRC. The exclusive business purpose of each of the Debtor Subsidiaries is to maintain one lease for nonresidential real property. The only exception is Debtor Brooklyn Roasting Company Powerplant LLC, which maintains both a lease for nonresidential real property and one lease for billboard advertising

space.    Aside from the leases, the Debtor Subsidiaries do not have any other assets.  The only liability of the Debtor Subsidiaries are the obligations arising from their respective leases.  The Debtor Subsidiaries do not maintain their own bank accounts and BRC satisfies their lease obligations directly.

     **i.**     <u>**History**</u>

14.    BRC was founded in October 2009 by Jim Munson, a former partner in craft beer producer The Brooklyn Brewery, and later the general manager of Dallis Brothers Coffee.  At that time, I led a group of investors to provide the initial funding for BRC. In 2010, Rob Herschenfeld led an equity raise for a separate, but related company, Brooklyn Roasting Works, LLC. At the end of 2010, BRC and Brooklyn Roasting Works, LLC combined to form one structure, which is currently known as BRC.  In 2011, BRC appointed Michael Pollack as a full-time manager and in 2012, he became a significant investor in the company.

15.    Initially, BRC contract-roasted coffee at an outside location, which it sold on a wholesale basis.  In 2011, the company moved into leased space at 25 Jay Street, in the DUMBO neighborhood of Brooklyn, New York, where it opened its first retail location and began roasting its own coffee beans.

16.    Between 2012 and 2017 sales expanded steadily. On the wholesale side of its business, BRC sold to grocery stores in distinctive tin cans, to 3rd party coffee shops, and to numerous corporate accounts such as Columbia University and Goldman Sachs.  BRC's retail business expanded at its original site, where it took on additional space, and by opening additional cafés in leased locations in Brooklyn and Manhattan.  By 2017, BRC's sales had reached $9.9 million split nearly evenly between wholesale operations and its seven cafés.  Also in 2017, BRC moved its headquarters from DUMBO to its new location at the Brooklyn Navy Yard, opened a

quality control lab, a much larger and more efficient roaster, and a completely refurbished packaging line.

B. **Circumstances Leadings to Filing the Subchapter V Cases**

17.    In 2018, BRC suffered financial reversals from a confluence of events.  Some were of its own making, including not meeting its own expense budgets.  But the largest reversal stemmed from a failed effort to sell BRC.  An investment group featuring the former chief executive officer of Dunkin' Donuts approached BRC in mid-year with an offer to purchase BRC outright.  After considerable negotiation, a letter of intent was signed agreeing on a purchase price of approximately $22 million.  The prospective purchasers already controlled several dormant Manhattan locations and expressed their desire for BRC to take over these locations and begin operations as soon as the sale transaction was completed.  The purchasing group hired a national accounting firm to perform due diligence.  As weeks of due diligence turned into months, BRC increased its staffing in preparation for taking over the new locations.  Instead of cutting costs to reduce its ongoing losses, BRC maintained its operations awaiting the expected closing on the sale transaction.  The closing never occurred. The prospective purchasing group walked away from the deal at the end of 2018.

18.    By the beginning of 2019, BRC's financial condition was poor.  BRC's revenues had actually declined in 2018 and did not show any growth for the first year since it was founded in 2009; losses had reached the alarming level of $1.4 million; and cash reserves were nearly gone.  BRC's lender, Brown Brothers Harriman ("BBH"), sought repayment of its $2.1 million loan (the "BBH Loan") and BRC had few options to enable its compliance.

19.     In response, Managing Member Michael Pollack agreed to loan the Debtor the monies necessary to pay off the BBH Loan, for BRC's benefit, to afford BRC time to recover from the failed sale transaction and the decline in revenue that had hurt the business in 2018.

20.     As a result of Mr. Pollack's loan to the Debtor to satisfy the BBH Loan, BRC managed a substantial and hard-won recovery in 2019. The company increased sales by 6% to a record $10.3 million, even as it slashed expenses by 9%.   It squeezed out a profit of $94,000 and stabilized its cash position, though at a minimal level.

21.     Expectations were rising in 2020.   Although still financially fragile, BRC had seemed to regain its footing.   Several potentially significant strategic partnerships were in development and BRC felt confident that it could again raise equity to replenish its balance sheet.

22.     In February of 2020, I was assigned, as Debtors' Managing Member, the task of preparing an offering.  But by mid- March 2020, with the spread of COVID-19 and the closing of all of its own cafés and most of its customers, raising money became impossible.

23.     Beginning mid-March 2020, BRC's two primary channels of revenue dried up. Retail sales – through its own cafés – dropped to near zero in April 2020, and then inched higher as BRC cautiously opened up limited take-out service.  Wholesale business – selling to other café's and grocery stores – plummeted as most larger customers (Columbia University, Goldman Sachs, the airports) themselves closed or severely limited their activities.   Grocery stores, which had previously accounted for approximately 7% of BRC's sales, were the lone surviving segment of the Debtors' business.

24.      In the beginning of April 2020, BRC was forced to lay off the great majority of its staff, including nearly everyone in its cafés.   For the next three months, BRC navigated a chaotic landscape of government-mandated commercial closings, consumer lock-downs, and fears about

staff and customer safety.  The entire world was facing the hard realities of COVID-19, but nowhere were the human and commercial costs higher than in New York City, where the overwhelming majority of BRC revenue was sourced.

25.     The second quarter of 2020 proved disastrous, with losses totaling nearly $300,000. Fortunately, BRC applied for and received a Payroll Protection Program ("PPP") loan of $727,000 from J.P. Morgan Chase Bank (the "PPP Loan")[2].  These funds from the PPP Loan proved vital to cover payroll and a limited portion of rent during May, June and July 2020.  But by August 2020, as the PPP funds dwindled and sales remained severely depressed, BRC realized it no longer had a realistic possibility of paying its past-due rent or rent that would become due in the foreseeable future for any of its café locations.  Despite good faith negotiations, none of BRC's major landlords to date have been willing to forego rent for closed locations, or to reduce rent enough to make continued operations viable.

26.     BRC believes that if it is relieved of the rent obligations of its shuttered cafés and is able to focus on its wholesale business, it will remain a viable and healthy business with an opportunity to grow again over time.  Its production facility, core management team, and good reputation in New York remain intact.

**C.  The Debtors' Business**

   **i.     Corporate Structure**

27.     Each of the Debtors is a corporation organized under the laws of the State of New York.  BRC is the parent company from which the business conducts the majority of its operations. The four other Debtors Subsidiaries of BRC and maintain leases for four of the Debtors' locations and advertising space, as set forth at length above.  I am presently managing each of the Debtors.

---

[2] The Debtors are in the process of applying for forgiveness for the PPP Loan.

28.    The Debtors are organized as follows:



*Lease Will be Rejected as of Petition Date

---

ii.    **Ownership Structure**

29.    Michael Pollack, Robert Herschenfeld, James Munson and myself own a combined 50.39% of the outstanding equity of BRC.  The approximately 40 remaining passive investors own a combined 49.61% of BRC, with no other individual owning as much as 10%.  The four non-parent Debtors are wholly owned subsidiaries of BRC.

| | |
|---|---|
| Michael Pollock | 18.73% |
| Robert Herschenfeld | 17.79% |
| James Munson | 12.66% |
| Thomas Potter | 1.21% |
| **TOTAL** | **50.39%** |

### iii.   **The Debtors' Senior Management**

30.     Messrs. Herschenfeld, Munson, Pollack and myself constitute the current board members of BRC as well as its subsidiary Debtors.

### iv.   **Capital Structure**

31.     The following loans are outstanding as of the Petition Date:

| Borrower | Lender | Amount Owed | Loan Type |
|---|---|---|---|
| BRC | Michael Pollack | $32,261.65 | Unsecured |
| BRC | Michael Pollack | $2,125,388.59 | Unsecured |
| BRC | Audi Financial Services | $14,449.00 | Secured |
| BRC | TD Bank - Auto Loan | $23,619.00 | Secured |
| BRC | JP Morgan Chase PPP | $727,000.00 | Unsecured |
| BRC | Wells Fargo Equipment Finance | $5,832.60 | Secured |
| | | **$2,922,718.24** | |

### v.   **The Debtors' Employees**

32.     Collectively, the Debtors currently have 15 employees across all business lines. *See* Local Rule 1007-4(a)(14).

### vi.   **Debtors' Assets and Liabilities**

### a.   **Assets**

33.     A current balance sheet and summary of the Debtors' assets and liabilities is attached as **Exhibit A**. *See* Local Rule 1007-4(a)(8).

### 1)   **Debtors' Leased Spaces**

34.     The Debtors currently lease the following premises (as listed by Debtor):

a.   Brooklyn Roasting Works LLC

    i.     Portion of Lobby, Annex Building, Brooklyn Army Terminal, Brooklyn, NY 11220;

    ii.    Units 101, 103, 104, and portion of the basement at 25 Jay Street, Brooklyn, NY 11201;

    b.  Brooklyn Roasting Company Powerplant LLC

       i.    Sign Posting on the rear of building located at 200 Flushing Avenue, Brooklyn, New York 11205;

      ii.    38, 40 and 42 Washington Avenue, Brooklyn, New York 112015 (as consolidated and restated in lease);

    c.  BRC Powerplant 45 Washington LLC

       i.    For the demised premises known as 45 Washington Street located in the building known as 55 Washington Street, Brooklyn, NY 11201;

    d.  BRC Powerplant 123, LLC

       i.    Building 123 in the Green Manufacturing Center at the Brooklyn Navy Yard in the Building 128 Complex, Buildings 28, 123, and 128, Brooklyn NY 11211;

    e.  BRC Powerplant, LLC

       i.    Retail Space C, 50 West 23rd Street, New York, NY 10010.

*See* Local Rule 1007-4(a)(10).

35.     The Debtors own personal property at the majority of the leased spaces, including coffee and production equipment necessary for the Debtors' ongoing operations.  The Debtors own a modest amount of office equipment that has insubstantial value.

### 2)     **Debtors' Insurance**

36.     As of the Petition Date, Debtors maintain property and liability insurance as set forth on the schedule of policies below:

| Insurance Policies | | | | |
|---|---|---|---|---|
| **Policy Type** | **Company** | **Policy Number** | **Term** | **Premium** |
| Commercial | Liberty Mutual | BKS58191076 | 11/9/2019 - 11/9/2020 | $9,647.00 |
| Business Owner | Liberty Mutual | BZS58191076 | 11/9/2019 - 11/9/2020 | $11,853.00 |
| Commercial Umbrella Policy | Liberty Mutual | USO58494733 | 11/9/2019 - 11/9/2020 | $8,873.00 |
| Commercial Automobile Policy | Liberty Mutual | BAA58191076 | 11/9/2019 - 11/9/2020 | $37,172.00 |
| Commercial Flood Policy | Wright Flood | 311151440733 | 4/2/2020 - 4/2/2021 | $914.00 |
| Commercial Surety Bond | Utica | SU5033195 | 3/1/2020 - 3/1/2021 | $3,197.00 |
| Employment Practices Liability | Mount Vernon | EPL2553739D | 6/5/2020 - 6/5/2021 | $2,011.00 |

| | | | | |
|---|---|---|---|---|
| Commercial Disability | Shelter Point | D490956 | 8/5/2019 - No Expiration | $9,052.00 |
| Workers Compensation & Employers Liability | Travelers | UB-8L297644-20-42-G | 12/26/2019 - 12/26/2020 | $55,473.00 |

### 3)      BRC's Bank Accounts

37.      As of the Petition Date, Debtor BRC maintains six (6) bank accounts, as listed below, and will be opening a debtor in possession account at Chase immediately upon the filing of these Subchapter V Cases.

| Financial Institution | Type of Account | Last 4 Digits of Account | Balance on Petition Date |
|---|---|---|---|
| JP Morgan Chase | Payroll | 1762 | $9,308.93 |
| JP Morgan Chase | Checking | 2650 | $824.38 |
| JP Morgan Chase | Operating | 2966 | $0.00 |
| JP Morgan Chase | Savings | 6850 | $0.00 |
| JP Morgan Chase | 23rd Cash | 7111 | $68.86 |
| JP Morgan Chase | Analysis Business | 7653 | $64,806.75 |
| | | **TOTAL** | **$75,008.92** |

### 4)      Debtors' Vehicles

38.      The Debtors own four (4) vehicles, two of which have outstanding automobile loan balances as of the date of the Petition.

| Vehicle Type | KBB Value | Auto Loan Balance |
|---|---|---|
| 2019 Grey Promaster RAM | $28,700 | $23,619 |
| Nissan NV 200 | $10,400 | |
| 2015 Black Promaster RAM | $18,300 | |
| 2016 Audi Q5 | $25,000 | $14,449 |
| **TOTAL** | **$82,400** | **$38,068** |

### 5)      Debtors' Receivables

39.      The Debtors are owed receivables that have the face value of $269,473.69, though a substantial portion of those receivables (approximately $141,554.80) are 60 days old or older. Therefore, less than $130,000 ($127,918.85) of those receivables are likely collectible.

40. Included among those receivables is an amount due from a third-party contract counterparty for which for which the Debtors have retained counsel, but have not yet commenced legal action to recover the amounts due.

### 6) **Debtors' Contracts**

41. The Debtors are also parties to a number of executory contracts, the majority of which are sales contracts with third parties for the supply of coffee and related products.

### 7) **Debtor Property Held by Others**

42. The Debtors have no property in possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity. *See* Local Rule 1007-4 (a)(10).

### 8) **Location of Debtors' Assets and Books and Records**

43. The majority of the Debtor's books and records are maintained at 63 Flushing Avenue, Building 123, Brooklyn Navy Yard, Brooklyn, New York 11205

### b. **Liabilities**

### 1) **Twenty Largest Unsecured Creditors**

44. A list setting forth the Debtors' twenty (20) largest unsecured creditors, excluding those persons who constitute "insiders" under Bankruptcy Code section 101(31), is attached hereto as **Exhibit B**. **Exhibit B** includes the creditors' names, addresses, telephone numbers (for persons familiar with the account, if available), amount of each claim, and an indication of whether the claims are contingent, unliquidated, disputed, or partially secured. *See* Local Rule 1007-4(a)(5).

### 2) **Five Largest Secured Creditors**

45. A list setting forth the Debtors' secured claims, is attached hereto as **Exhibit C**. **Exhibit C** includes the creditors' names, addresses, telephone numbers (for persons familiar with

the account, if available), amount of each claim, and an indication of whether the claims are contingent, unliquidated, disputed, or partially secured. *See* Local Rule 1007-4(a)(6).

### 3) <u>Threatened or Pending Actions Against the Debtor</u>

46.     None of the Debtors are defendants in any pending lawsuits nor are any legal actions threatened against the Debtors.

### D. <u>First Day Motions</u>

#### 1. <u>Lease Rejection Motion</u>

47.     On the first day of these Subchapter V Cases, the Debtors will file a motion (the "<u>Lease Rejection Motion</u>") for entry of interim and final orders, pursuant to sections 365(a) and 554(a) of the Bankruptcy Code and Rules 6003, 6004, 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"): (i) authorizing the Debtors to reject certain unexpired leases of nonresidential real property for certain premises leased by the Debtors (collectively, the "<u>Rejected Leases</u>") as set forth on Schedule 1 to the Proposed Orders to the Lease Rejection Motion and authorizing the Debtors to implement the Lease Rejection Procedures as more fully described in the Lease Rejection Motion and setting a bar date within which the Landlord of any Rejected Lease has to file a claim for lease rejection damages; (ii) authorizing the Debtors to abandon any remaining personal property located at the premises for the Rejected Leased (the "<u>Premises</u>") (as defined herein), each effective *nunc pro tunc* to the Petition Date (as defined herein); and (iii) granting related relief.

48.     In the ordinary course of business, the Debtors are collectively tenants under seven (7) different leases for nonresidential real property (collectively, the "<u>Leases</u>") from which they operate their retail, wholesale and distribution businesses.   The Debtors do not own any of the real property from which they conduct their business.  In connection with their efforts to preserve and

maximize the value of their estates through the filing of these Subchapter V Cases, the Debtors, in their business judgment, have determined that two of the Leases are burdensome and should be rejected immediately upon filing of the Subchapter V Cases because they are no longer necessary to the Debtors' business and the rejection of those Leases will facilitate the Debtors' effective reorganization.

49.    The first Rejected Lease is for the premises located at Units 101, 103, 104, and portion of the basement at 25 Jay Street, Brooklyn, NY 11201, which is occupied by Debtor BRC (the "<u>BRC Lease</u>").  BRC previously relinquished control of and surrendered the premises of the BRC Lease effected June 30, 2020, as set forth in written correspondence, dated June 26, 2020 and addressed to the landlord of the BRC Lease.  Nevertheless, in the abundance of caution and to eliminate any risk of further liability associated with the BRC Lease, BRC seeks to reject the BRC Lease in these Subchapter V Cases.  The second Rejected Lease is for the premises located at Retail Space C, 50 West 23rd Street, New York, NY 10010, which is occupied by Debtor BRC Powerplant LLC (the "<u>23rd Street Lease</u>").[3]

50.    Rejecting the Rejected Leases immediately upon filing of these cases will eliminate the unnecessary accrual of administrative expenses that might be incurred in connection with the Rejected Leases, a result that will benefit the Debtors' estates and their creditors.

### 2.  <u>Joint Administration Motion</u>

51.    On the Petition Date, the Debtors will also file a motion (the "<u>Joint Administration Motion</u>") seeking entry of an order, pursuant to Bankruptcy Rule 1015(b), authorizing and directing, for procedural purposes only, the joint administration of these Subchapter Cases.

---

[3] Prior to the Petition Date, the landlord of the 23rd Street Lease is aware of BRC Powerplant LLC's intention to reject the 23rd Street Lease formally in these Subchapter V Cases.

52.     In the Joint Administration Motion, the Debtors will request that the Court maintain one file and one docket for all of the jointly administered Subchapter V Cases under the case number assigned to Brooklyn Roasting Works, LLC, *et al.* and that these Subchapter V Cases be jointly administered under a consolidated caption.

53.     The Debtors believe that joint administration of the Debtors' Subchapter V Cases is warranted because the financial affairs and business operations of the Debtors are closely related. Entry of an order directing joint administration of these cases will avoid duplicative notices, applications and orders, and will thereby save considerable time and expense for the Debtors and result in substantial savings to their estates.

### E.  The Debtors' Post-Petition Operations and Goals

54.     Following the Petition Date, the Debtors intend to continue the operation of its business and the management of its properties as Debtors and Debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. *See* Local Rule 1007-4.

55.     The Debtors propose to pay BRC's officers, including Jim Munson (President), Michael Pollack (Manager) and myself, Manager, Chairman of the Board and point person from the Debtors for these Subchapter V Cases, collectively $6,700 per week for the thirty (30) day period following the Petition Date, which is consistent with their pre-petition compensation. *See* Local Rule 1007-4(a)(15).

56.     The Debtors propose to pay BRC's employees a total weekly payroll of $16,500 as itemized below:

| Weekly Payroll | |
|---|---|
| Retail Payroll | $8,200 |
| Production Payroll | $1,600 |
| G&A Payroll (Overhead) | $6,700 |
| **TOTAL** | **$16,500** |

57.     A schedule of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, for the 30-day period following the Petition Date is annexed hereto as **Exhibit D.** *See* Local Rule 1007-4(a)(16).

58.     During the pendency of these Subchapter V Cases, the Debtors anticipate using the tools set forth in the Bankruptcy Code to reduce the Debtors' overhead and to restructure their debts. I believe the reorganization of the Debtors' businesses will benefit all of the Debtors' creditors.

### Conclusion

59.     The Debtors reserve the right to amend or supplement any of the schedules annexed hereto as exhibits in the event additional information is obtained by the Debtors during the course of these proceedings.

60.     I believe that the protection of the Bankruptcy Court will enable the Debtors to maximize the value of its assets for the benefit of the Debtors' estates and their creditors.


I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated:  October 21, 2020


*/s/ Thomas D. Potter*
Thomas D. Potter

# **Exhibit A**

Brooklyn Roasting Company
Balance Sheet 9/30/20

**ASSETS**

| | | |
|---|---:|---|
| **Current Assets** | | |
| **Checking/Savings** | | |
| Bank Accounts | 345,297.50 | |
| BRINKS | (14,603.27) | |
| Paypal | 9,429.17 | |
| Cash | 4,559.00 | |
| **Total Checking/Savings:** | 344,682.40 | |
| **Accounts Receivable** | 127,918.00 | |
| **Other Current Assets** | | |
| Undeposited Funds | 72,183.83 | |
| Inventory Asset | 48,261.00 | |
| Outstanding Loans | - | |
| Security Deposits | - | |
| Miscelaneous | 5,852.98 | |
| **Total Other Current Assets** | 126,297.81 | |
| **Total Current Assets** | 598,898.21 | |
| **Fixed Assets** | | |
| Machinery & Equipment | 226,077.00 | |
| Automobiles | 44,332.00 | |
| Coffee Equipment | 31,883.00 | |
| **Total Fixed Assets** | 302,292.00 | |
| **Goodwill & Intangible Assets** | - | |
| **TOTAL ASSETS** | $  901,190.21 | |

**LIABILITIES & EQUITY**

| | | |
|---|---:|---|
| **Liabilities** | | |
| **Current Liabilities** | | |
| Total Accounts Payable | 664,110.04 | |
| Total Credit Cards | 67,862.26 | |
| **Other Current Liabilities** | | |
| Sales Tax Payable | 10,669.67 | |
| Payroll Liabilities | 35,638.01 | |
| Miscellaneous | 6,790.14 | |
| **Total Other Current Liabilities** | 53,097.82 | |
| **Total Current Liabilities** | 785,070.12 | |
| **Long Term Liabilities** | | |
| Due to Michael Pollack (A) | 2,125,388.59 | |
| Due to Michael Pollack (B) | 28,448.25 | |
| Chase - PPP Loan | 726,957.00 | |
| Loan Payable - Pallet Stacker | 5,832.60 | |
| Loan - Auto Financial | 14,449.09 | |
| Loan - TD FInance | 23,619.33 | |
| **Total Long Term Liabilities** | 2,924,694.86 | |
| **Total Liabilities** | $  3,709,764.98 | |
| **Equity** | | |
| Partner's Equity | 4,119,517.26 | |
| Retained Earnings | (3,104,880.88) | |
| Net Income | (3,892,961.00) | |
| **Total Equity** | (2,878,324.62) | |
| **TOTAL LIABILITIES & EQUITY** | 831,440.36 | |

NOTES:
   Includes consolidated subsidiaries
   Assets listed at current liquidation value net of uncollectibles
   Furniture, fixtures and misc. coffee equipment at leased cafes are
       assumed to have no current value
   Deposits on leased premises are assumed to have no value

# Exhibit B

## Debtors' Consolidated List of Creditors Who Have the 20 Largest Unsecured Claims and are Not Insiders

| Name of Creditor | Creditor Contact | Nature of Claim | Amount of Claim |
|---|---|---|---|
| 25 Jay Street LLC | 77 Box Street Brooklyn, NY 11222 | Landlord Rent Arrears | $141,206.64 |
| Basin Haulage, Inc. | PO Box 790058 Middle Village, NY 11379 | Goods or Services Sold and Delivered | $250.00 |
| CLW Distributors | 79 G Express Street Plainview, NY 11803 | Goods Sold and Delivered | $250.00 |
| Cold Brew Ventures LLC Back Bay Roasters & Brewers | 10 Jewel Drive Wilmington, MA 01887 | Goods Sold and Delivered | $25,000.00 |
| Con Edison | 4 Irving Place New York, NY 10003 | Utility Services | $11,290.65 |
| Flushing Brooklyn, Inc. | 42 Washington Avenue Brooklyn, NY 11205 | Landlord Rent Arrears | $5,500.00 |
| GMC Master Tenants, LLC | 63 Flushing Avenue, Building 292, Unit 300 Brooklyn, NY 11205 | Landlord Rent Arrears | $182,508.44 |
| JP Morgan Chase | PO Box 9001022 Louisville, KY 40290-1022 | PPP Loan | $726,957.00 |
| Leibensperger Law Firm | 111 John Street Suite 2510 New York, NY 10038 | Services Sold and Delivered | $225.00 |
| Pain D'Avignon III Ltd. | PO Box 1872 Long Island City, NY 11101 | Goods Sold and Delivered | $500.00 |
| Two Trees Management Co. LLC | 45 Main Street, 601 Brooklyn, NY 11201 | Landlord Rent Arrears | $234,525.86 |
| Two Trees Management Co. LLC | 45 Main Street, Suite 1100 Brooklyn, NY 11201 | Landlord Rent Arrears | $73,794.32 |

# **Exhibit C**

## Debtors' Consolidated List of Creditors Who Have the Largest
## Secured Claims and are Not Insiders

| **Name of Creditor** | **Creditor Contact** | **Nature of Claim** | **Amount of Claim** |
|---|---|---|---|
| Audi Financial Services | PO Box Financial Services<br>Carol Stream, IL 60197-5215 | Automobile Loan | $14,449.00 |
| TD Auto Finance | PO Box 9223<br>Farmington Hills, Michigan 48333-9223 | Automobile Loan | $23,619.00 |
| Wells Fargo Equipment Finance | PO Box 1433<br>Des Moines, IA 50306-1433 | Equipment Loan | $5,832.60 |
| | | | |

# **Exhibit D**

# 13-Week Budget Options

## Revenue

| | Weekly | 13 Week |
|---|---|---|
| **Retail** | | |
| 200 Flushing | $13,500 | $175,500 |
| 45 Washington | $13,500 | $175,500 |
| Wythe Ave | $1,250 | $16,250 |
| Building 92 | $3,750 | $48,750 |
| *Totals* | *$32,000* | *$416,000* |
| **Wholesale** | | |
| Wholesale - Manhattan | $5,000 | $65,000 |
| Wholesale  - Brooklyn | $12,000 | $156,000 |
| Wholesale - Out & HA | $2,500 | $32,500 |
| Wholesale - Grocery | $15,500 | $201,500 |
| *Totals* | *$35,000* | *$455,000* |
| **Webstore** | | |
| Webstore Sales | $12,000 | $156,000 |
| *Totals* | *$12,000* | *$156,000* |
| **Total Revenue** | **$79,000** | **$1,027,000** |

## Expenses

| | Weekly | 13 Week |
|---|---|---|
| **Retail** | | |
| Rent | $3,625 | $47,125 |
| Payroll Retail | $8,200 | $106,600 |
| Utilities | $2,250 | $29,250 |
| Coffee Costs | $4,500 | $58,500 |
| Cafe Food and Supplies | $3,500 | $45,500 |
| Credit card fees | $1,000 | $13,000 |
| *Totals* | *$23,075* | *$299,975* |
| **Wholesale** | | |
| Sales & Service Payroll | $6,500 | $84,500 |
| Production Payroll | $1,600 | $20,800 |
| Coffee Costs | $14,300 | $185,900 |
| Storage | $500 | $6,500 |
| Delivery | $2,350 | $30,550 |
| *Totals* | *$25,250* | *$328,250* |
| **Webstore** | | |
| Webstore Coffee Costs | $2,640 | $34,320 |
| UPS | $3,750 | $48,750 |
| Credit Card fees | $750 | $9,750 |
| Shipping supplies | $200 | $2,600 |
| *Totals* | *$7,340* | *$95,420* |
| **Overhead** | | |
| Rent | $7,500 | $97,500 |
| Utilities | $1,500 | $19,500 |
| Payroll G&A | $6,700 | $87,100 |
| Marketing & promotion | $500 | $6,500 |
| Insurance | $2,500 | $32,500 |
| Miscellaneous & maintenance | $2,000 | $26,000 |
| *Totals* | *$20,700* | *$269,100* |
| **Total Expenses** | **$76,365** | **$992,745** |
| **Net Total** | **$2,635** | **$34,255** |

